IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEITH ALLEN PHELPS            )
                              ) No. 15-257
                              )
    v.

CAROLYN W. COLVIN

## SYNOPSIS

Plaintiff filed an application for supplemental social security disability insurance benefits and supplemental social security income, alleging disability due to physical and mental impairments, beginning June 14, 2011. Plaintiff's application was denied initially, and upon hearing before an Administrative Law Judge ("ALJ"). The Appeals Council denied his request for review. Before the Court are the parties' cross-Motions for Summary Judgment. For the following reasons, Plaintiff's Motion will be denied, and Defendant's granted.

## OPINION

### I. STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3) 7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted). Nonetheless, I am not required to read the ALJ's opinion "in a vacuum." Knox v. Astrue, 2010 U.S. Dist. LEXIS 28978, at *22 (W.D. Pa. May 26, 2010).

## II. PLAINTIFF'S MOTION

First, Plaintiff contends that the ALJ erred in his analysis of the opinions of examining psychologists Holmes and Uran. Plaintiff objects both to the ALJ's failure to explicitly consider the factors identified in 20 C.F.R. § 414.1527(c) applicable to medical opinion; he also points to several areas of the medical opinion that support the physicians' opinions.

An ALJ "may afford a treating physician's opinion more or less weight depending upon the extent of supporting evidence." Hild v. Astrue, 2008 U.S. Dist. LEXIS 57785 (M.D. Pa. July 28, 2008). Certainly, therefore, an ALJ may give little weight to a doctor's opinion that is inconsistent with the medical evidence of record and with his own examination findings. Woznicki v. Colvin, 2016 U.S. Dist. LEXIS 62792 (D. Del. May 12, 2016). However, a conclusory statement that a physician's opinion is "inconsistent with his own exam results" is insufficient, as it fails to achieve the level of specificity required to reject a physician's opinion. Amirkhanov v. Colvin, 2016 U.S. Dist. LEXIS 52361, at *10 (W.D. Wash. Apr. 18, 2016). It is error to reject opinion as inconsistent with evidence of record, without identifying what the inconsistent evidence is. King v. Barnhart, 114 Fed. Appx. 968, 972 (10th Cir. 2004).[1]

I note, too, that while an ALJ is required to "consider" the factors identified in 20 C.F.R. § 404.1527(c), "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." Hartzell v. Colvin, 2015 U.S. Dist. LEXIS 133679, at **18-19 (M.D. Pa. Sept. 30, 2015). Thus, a factor-by-factor analysis is not required. Id. "If an explanation allows meaningful judicial review, it suffices." Id. at *19.

On June 29, Dr. Uran, a state agency examiner, assigned a GAF of 55, and that Plaintiff had moderate restrictions in understanding and remembering detailed instructions and making simple work-related decisions; moderate to marked restrictions in interacting appropriately with the public, supervisors, and co-workers; and marked restrictions in carrying out detailed instructions. The ALJ, acknowledging that Dr. Uran is a psychologist, gave her opinion "some

---

[1] As regards the GAF score, courts have acknowledged "that there will be inconsistencies between a claimant's GAF scores and an assessment of a claimant's ability to do work," and thus it is inappropriate to use a single GAF score to disprove a more detailed functional assessment. Margulis v. Colvin, 2015 U.S. Dist. LEXIS 28653, at *46 (E.D. Cal. Mar. 6, 2015).

3

weight." The ALJ found that greater than moderate limitations were not supported by her own examination of Plaintiff, the GAF score assigned, and Plaintiff's conservative treatment history.

I find no error in the ALJ's treatment of Dr. Uran's opinion, despite the fact that greater clarity would have been preferable. It is not error to consider whether an assigned GAF score is congruent with a provider's other opinions. See Long v. Colvin, 2016 U.S. Dist. LEXIS 45993, at **25-26 (M.D. Pa. Apr. 5, 2016). Further, although Plaintiff takes issue with the ALJ's description of Plaintiff's treatment as "conservative," it is clear that the ALJ considered the entirety of his mental health treatment.[2] The remainder of Plaintiff's argument includes a recitation of his diagnoses and symptoms, and the assertion that these do, in fact, support Dr. Uran's opinion. As I have stated elsewhere, "[t]he standard before me is not whether there is evidence to support [Plaintiff's] position but, rather, whether there is substantial evidence to support the ALJ's finding." Burczyk v. Colvin, 2016 U.S. Dist. LEXIS 70603, at *3 (W.D. Pa. May 31, 2016).[3] The ALJ considered the entire record regarding Plaintiff's mental impairments, such as the opinion of a state agency psychologist, and Plaintiff's testimony and activities; his approach, and explanation, was adequate.

---

[2] With respect to Plaintiff's conservative treatment history, the ALJ noted that his compliance was questionable because he was noted to have been taking medications incorrectly, and because he went to treatment at Stairways for two months in 2011, and two months in 2013. Elsewhere, however, the ALJ notes that Plaintiff received treatment in 2012, while imprisoned, and Stairways records indicate that after leaving Stairways, Plaintiff treated with Dr. Francis. Whether this treatment was traditional, limited, or moderate may be a matter of opinion, but the ALJ did not patently err in describing it as such. The effectiveness of treatment, or lack of effectiveness, does not bear on whether it is properly described as "conservative."

[3] I note, too, that the ALJ's residual functional capacity ("RFC") appears to have accommodated the limitations opined to by Dr. Uran. The mental portion of the RFC limited Plaintiff to no work with the public; only occasional contact with supervisors and co-workers; and only simple tasks, decisions, and instructions. A limitation to occasional interaction may accommodate a marked limitation. See, e.g., Clark v. Colvin, 2016 U.S. Dist. LEXIS 12430, at *7 (W.D. Wash. Feb. 2, 2016); Fiducia v. Comm'r of Soc. Sec., 2015 U.S. Dist. LEXIS 86974 (N.D.N.Y July 2, 2015). Therefore, even if I were to find error in the ALJ's treatment of Dr. Uran, that error was likely harmless. I note, too, that Dr. Uran did not straightforwardly find that Plaintiff had marked limitations in these areas – instead, she found "moderate to marked" limitations. Thus, the ALJ's second hypothetical to the vocational expert, which included marked limitations only, did not strictly reflect Dr. Uran's findings.

Next, I address the ALJ's consideration of Dr. Holmes, a psychologist at Stairways Behavioral Health ("Stairways"), where Plaintiff underwent mental health treatment. On August 20, 2013, Dr. Holmes opined that Plaintiff would often or occasionally have difficulty in various areas relating to interactions with others, would occasionally have difficulty managing even a low-stress work environment, would often have difficulty maintaining concentration, pace, and persistence, and would be unable to complete an 8-hour shift 15-20 days per month, due to increased symptoms. The ALJ gave Dr. Holmes' opinion "little weight," because Dr. Holmes had minimal experience with Plaintiff, and his opinion regarding inability to work 15-20 days per month was "speculation," and was inconsistent with Dr. Holmes' own mental status examinations.

Although greater detail regarding an analysis of Dr. Holmes' opinions would have been preferable, the ALJ's decision is sufficient to permit review. Although the ALJ used the word "inconsistent," he specified that he rejected Dr. Holmes' opinion regarding days unable to work due to lack of record support, rather than an affirmative conflict between two pieces of evidence. In other words, he did not merely refer to an inconsistency without identifying any. Indeed, Plaintiff points to no particular support in the record for the conclusions that the ALJ rejected. Plaintiff's argument boils down to pointing to the weight of the evidence, and contending that it goes in favor of accepting Dr. Holmes' assessment. Again, I cannot re-weigh the evidence, or remand because I would have reached a different conclusion.

Finally, Plaintiff, citing to <u>Ramirez v. Barnhart</u>, 372 F. 3d 546 (3d Cir. 2004), contends that the ALJ failed to account for his finding that Plaintiff is moderately impaired in concentration, persistence, and pace. The RFC included a limitation to "simple tasks, simple decisions and simple instructions." "Merely citing to an ALJ's finding that a claimant suffers

5

from moderate limitations in concentration, persistence, or pace at step three in conjunction with Ramirez is an insufficient basis for remand." Rubendall v. Colvin, 2016 U.S. Dist. LEXIS 119985, at **46-47 (M.D. Pa. Aug. 15, 2016). Moreover, in a non-precedential opinion, a panel of our Court of Appeals found that a limitation to "simple, routine tasks" adequately accounted for moderate difficulties in concentration, persistence, and pace. McDonald v. Astrue, 293 Fed. App'x 941, 946 (3d Cir. 2008).[4] I find no error in this regard.

## CONCLUSION

In sum, while I empathize with Plaintiff's psychiatric and other difficulties, I am bound by applicable standards to find that the ALJ did not err in his assessment of the evidence before him. Plaintiff's Motion will be denied, and Defendant's granted. An appropriate Order follows.

## ORDER

AND NOW, this 26th day of January, 2017, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is DENIED, and Defendant's GRANTED.

BY THE COURT:

/s/Donetta W. Ambrose

_____

Donetta W. Ambrose

Senior Judge, U.S. District Court

---

[4] See Thompson v. Commissioner, 2016 U.S. LEXIS 67054 (D.N.J. May 23, 2016) (discussing McDonald).

6